UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60299-CIV-COHN/Seltzer

BUCKEYE VENTURES, INC.,
n/k/a ENERGY KING, INC.

    Plaintiff,

vs.

TRAFALGAR CAPITAL SPECIALIZED
INVESTMENT FUND LUXEMBOURG, and
TRAFALGAR CAPITAL Sarl,

    Defendants.
_____/
                                                 CASE NO. 09-60230-CIV-COHN/Seltzer

TRAFALGAR CAPITAL SPECIALIZED
INVESTMENT FUND, LUXEMBOURG,
a Luxembourg SICA V Fund,

    Plaintiff,

vs.

ENERGY KING, INC., f/k/a Buckeye Ventures, Inc.;
JEFFREY R. HULTMAN; ALAN MINTZ; and
AMERICAN RESIDENTIAL SERVICES, L.L.C.,

    Defendants
_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS

THIS CAUSE is before the Court upon the Trafalgar Defendants' Motion to Strike Jury Demand [DE 8 in Case No. 09-Civ-60299] and Motion to Dismiss [DE 15 in Case No. 09-Civ-60299], the Energy King, Mintz, Hultman and American Residential Services' Motion to Dismiss Counts I, III, and V and Motion for Enlargement of Time to Respond as to Counts II and IV [DE 14 in Case No. 09-Civ-60320], and the Energy

King Defendants' Motion to Dismiss or Stay [DE's 24/ 31 in Case No. 09-Civ-60320]. The Court has carefully considered the motions, responses and replies thereto,[1] and is otherwise fully advised in the premises.

## I. BACKGROUND

Energy King, Inc. (a company formerly known as Buckeye Ventures, Inc.), entered into a series of agreements with Trafalgar Capital Specialized Investment Fund, by whose terms Trafalgar lent or invested money to Energy King. After a failed agreement for Trafalgar to receive partial repayment in order for it to agree to Energy King's sale of certain assets to American Residential Services, LLC ("ARS"), Trafalgar issued a notice of default to Energy King of the loan/securities agreements, seeking the full repayment due of $1,745,886.80. This act triggered this litigation.

Energy King filed the first action herein, Case No. 09-Civ-60299, alleging in Count I that the agreements between the parties are usurious loan agreements, subject to not only rescission, but return by Trafalgar[2] of all payments to Energy King, along with double the amount of interest reserved, taken or exacted pursuant to Chapter 687 of the Florida Statutes. Count II of Energy King's complaint seeks a declaratory judgment that the agreements are usurious and requiring Trafalgar to return all stock

---

[1] This review includes the Energy King Defendants's sur-reply in opposition to Trafalgar Defendants' Motion to Dismiss in Case 09-Civ-60299 [DE 24], though the Energy King Defendants did not file a reply to the Trafalgar Plaintiffs' response to the Motion to Dismiss in Case No. 09-Civ-60320.

[2] Energy King has named as a defendant an additional entity "Trafalgar Capital Sarl," but does not separately describe Trafalgar Capital from Trafalgar Capital Specialized Investment Fund. Thus, "Trafalgar" will refer to both entities.

warrants, pledged collateral, release of UCC-1 filings in any state, pay actual damages and forfeit all payments. The Trafalgar defendants seek to dismiss this action for failure to state a claim, and to strike the jury demand pursuant to the plain terms of the agreements.

Trafalgar filed the second lawsuit two business days later, alleging fraud in the inducement against Energy King and a corporate officer, Chief Operating Officer Alan Mintz (Count I); the amount due on the convertible debenture against Energy King (Count II); fraudulent transfer of assets against Energy King, Mintz, Chief Executive Officer Jeffrey Hultman and ARS (Count III); tortious interference against ARS (Count IV); and conspiracy against all Defendants (Count V). All Defendants move to dismiss Counts I, III, and V and extend the deadline to respond to Counts II and IV, as well as a separate motion to dismiss the entire complaint because it should have been filed as a compulsory counterclaim to Energy King's earlier filed usury action.

## II. DISCUSSION

### A.  Motion to Dismiss Standard

Until the Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001). However, pursuant to Twombly, to survive a motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the

3

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.  Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

## B.  Usury Claim

The Trafalgar Defendants seek to dismiss Energy King's claims that the agreements at issue constitute an usurious loan under Florida law.  Trafalgar argues that there is no affirmative cause of action for usury under Florida law -- only a defense on an action to collect on such a loan.  Trafalgar also asserts that the agreements at issue are not a loan at all, but rather constitute an agreement for Trafalgar to invest and risk its capital in Energy King.

Trafalgar asserts that Florida law does not recognize usury as cause of action, but rather is only an affirmative defense to an action to collect a debt, relying upon Cerrito v. Kovitch, 423 So.2d 1008, 1009 (Fla.Dist.Ct.App. 1982).[3]  While Cerrito is

---

[3] Trafalgar also argues that the usury statute is inapplicable to the agreements at issue because there is no "loan" involved.  If there were a usury defense available, Trafalgar seeks to have Energy King file that defense in the action brought by Trafalgar, Case No. 09-Civ-60320.

4

cited accurately by Trafalgar, later case law cited by Energy King clearly allows claims of usury.  In Oregrund Limited Partnership v. Sheive, 873 So.2d 451, 453 (Fla.Dist.Ct.App. 2004), a Florida district court reversed the dismissal of a usury claim, concluding that appellants sufficiently stated a cause of action based upon violation of the usury statutes.  The district court went on to describe the elements of a usury claim.  Id. at 456.  Therefore, the Court will not dismiss the usury claim on this authority.

### 1.  Are the Agreements a Loan?

Trafalgar argues in its motion to dismiss that the agreements at issue are not subject to the usury laws as they do not constitute a loan.  "Whether or not a transaction is subject to the usury laws of Florida is a question of fact."  Beausejour Corp., N.V. v. Offshore Development Company, Inc., 802 F.2d 1319, 1320 (11th Cir. 1986).   The law is clear that the substance of the transaction rather than the form is examined to determine whether the transaction should be considered a loan.  Id.; Oregrund, 873 So.2d at 457.  Trafalgar argues that the transactions are a hybrid form of an investment, with options to pay the debt in stock, and several charges for services to the borrower that cannot be considered interest.  The factors a court must use to make this determination are whether the lender's money is at risk, Beausejour, 802 F.3d at 1321, whether there was a repayment option, Oregrund, 873 So.2d at 458, and whether there was an agreement for a return greater than the legal rate.  Id.  Although it may fall to this Court to decide the nature of the agreements at issue prior to trial, at this motion to dismiss stage, the record is not sufficiently developed for the court to make that decision.  The claim has been sufficiently stated to proceed through

discovery.

### 2. Loan Broker Damages Not Properly Pled

Without specifically making an allegation in its Complaint that Trafalgar was a "loan broker," Energy King nonetheless relies upon part of the Loan Broker Act, Fla. Stat. § 687.14 et seq., for part of its usury claim. This act expanded the remedies available to a usury victim with a claim against a loan broker. Fla. Stat. § 687.147(1). A loan broker is defined as someone (not otherwise regulated by a state or federal agency), who "[f]or or in expectation of consideration arranges . . . or offers to fund a loan of money. . . . Fla. Stat. § 687.14(4). A violation occurs when an advance fee is assessed or collected or false or misleading representations are made in the offer or sale of the services of a loan broker. Fla. Stat. § 687.141.

Energy King's Complaint does not allege that Trafalgar is a loan broker nor that it committed a prohibited act (other than usury). Thus, Energy King cannot seek the remedies available in Fla. Stat. § 687.141. The Court therefore dismisses (or strikes) the remedies in subparagraphs (d) and (e) of the "wherefore" clause of Count I for attorneys' fees and costs and punitive damages.[4]

### C. Fraud in the Inducement

In Case No. 09-Civ-60320, Trafalgar has alleged fraud in the inducement against Energy King and its Chief Operating Officer Alan Mintz. Trafalgar asserts that Mintz misrepresented that Energy King would invest the money to acquire related

---

[4] Energy King also seeks punitive damages in the "wherefore" clause of Count II, subparagraph (b)(v), which is stricken as well.

6

businesses and that Trafalgar would have a security interest in all of its assets in order for Trafalgar to agree to the loan in the first place.  Energy King moves to dismiss this claim for failure to plead reliance with particularity under Rule 9(b) and as being barred by the Economic Loss Rule.

### 1.  Pleading Fraud with Particularity

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The particularity requirement of Rule 9(b) serves an important purpose in fraud actions by "alerting defendants to the precise misconduct with which they are charged and protecting spurious charges of immoral and fraudulent behavior."  Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted).  The application of Rule 9(b), however, must not abrogate the concept of notice pleading under the federal rules.  Id.; Friedlander v. Nims, 755 F.2d 810, 813 n.2 (11th Cir. 1985) ("[A] court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading.").

More specifically, the Eleventh Circuit stated in Ziemba that: "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a

consequence of the fraud." 256 F.3d at 1202 (quotations and citations omitted); U. S. ex rel. Clausen v. Laboratory Corp. of America, Inc., 290 F.3d 1301, 1310 (11th Cir. 2002).

Energy King argues that Trafalgar has failed to plead its reliance with particularity. Even assuming that reliance itself must be plead with particularity, something not described in the above recitation of the Rule, Trafalgar has in fact pled its reliance with sufficient particularity. See Compl. ¶¶ 12, 39.[5] Therefore, the Court will not dismiss the claim on this ground.

### 2. Economic Loss Rule

Energy King asserts that Trafalgar's claim for fraudulent inducement fails to provide facts separate and distinct from its breach of the debenture claim and that the claim is therefore barred by the economic loss rule. Under Florida law, to state a cause of action for fraud in the inducement, a party must establish the following elements: 1) a false statement regarding a material fact; 2) the person making the statement knew or should have known that the representation was false; 3) intent by the person making the statement to induce action or reliance; and 4) injury suffered because of justifiable reliance on the representation. Biscayne Inv. Group, Ltd. v. Guar. Mgmt. Servs., Inc., 903 So. 2d 251, 255 (Fla.Dist.Ct.App. 2005) (citing Samuels v. King Motor Co., 782 So. 2d 489 (Fla.Dist.Ct.App. 2001)).

This Court has previously analyzed this issue and incorporates the following

---

[5] The numbered paragraphs in Trafalgar's Complaint in Case No. 09-60320 have paragraph 38 and 39 follow paragraph 22 on pp. 12-13 of the Complaint.

discussion of the economic loss rule:

> The economic loss rule represents the proposition that "[i]n the absence of personal injury or property damage, a party is generally not entitled to initiate an action in tort to recover an economic loss." Sarkis v. Pafford Oil Co., Inc., 697 So. 2d 524, 527 (Fla.Dist.Ct.App. 1997) (citing Casa Clara Condominium Assoc., Inc. v. Charley Toppino & Sons, Inc., 620 So. 2d 1244 (Fla. 1993)). "This rule is based on the premise that parties to a contractual relationship have allocated their respective rights and remedies and consequently it is inappropriate to introduce tort remedies." Id. There are, however, certain torts which can succeed even where the parties have a contractual relationship. "Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract." HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996). Fraudulent inducement is such an example because it is a tort independent of a breach of contract claim in that it "'requires proof of facts separate and distinct from the breach of contract.'" Indemnity Ins. Co. v. Am. Aviation, Inc., 891 So. 2d 532, 537 (Fla. 2004) (quoting HTP, 685 So. 2d at 1239). "[A] truly independent cause of action for fraudulent misrepresentation, where the ability of one party to negotiate fair terms is undermined by the other's fraudulent behavior, is not barred by the economic loss rule." Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So. 2d 74, 77 (Fla.Dist.Ct.App. 1997).

International Star Registry of Illinois v. Omnipoint Marketing, LLC, 510 F.Supp.2d 1015, 1025 (S.D.Fla. 2007) (J. Cohn).

Energy King asserts that the instant case can be analogized to Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So. 2d 74 (Fla. 3d DCA 1997). The Court again cites to its analysis in International Star Registry:

> In Hotels, the court found that the plaintiff's fraud in the inducement claim was barred by the economic loss rule. The parties entered into a licensing agreement whereby the plaintiff would pay a licensing fee to become part of the defendants' hotel chain. Id. at 75. Before the plaintiffs signed the agreement, the defendants made numerous representations about the performance of plaintiff's hotels once they joined the hotel chain. Id. The court noted that a "critical distinction must be made where the alleged fraudulent misrepresentations are inseparably embodied in

9

the parties' subsequent agreement" such as where the contract contains an integration clause. Id. at 77. The court found that the integration clause in the contract superceded any alleged misrepresentations made before the parties entered into the hotel licensing agreements. Id. The misrepresentations were "interwoven and indistinct from the heart of the contractual agreement." Id. Further, the allegations contained in the fraudulent misrepresentation claim were no different than those the plaintiffs could have brought had the contract included a warranty of quality and performance. Id. Therefore, the claim was barred by the economic loss rule.

In this case, the Complaint alleges that Energy King was to provide a security interest in all of Energy King's assets. Compl. § 22. If the allegation was that Energy King misrepresented the **value** of its assets, like the performance of the hotel chain in Hotels of Key Largo or the mailing list in International Star Registry, than this action would be barred by the economic loss rule. However, as Trafalgar asserts in opposition, it was induced to sign the agreement and loan or invest $1.5 million in Energy King in part because Mintz represented to Trafalgar that it was to receive a security interest in all of Energy King's assets. This misrepresentation is separate from the performance of the contract in that it did not involve the value of the security interest, but whether such interest would be recognized at all. The Court will therefore deny the motion to dismiss the fraudulent inducement claim.[6]

### D.  Fraudulent Transfer of Assets

Energy King, Mintz, Hultman and ARS (hereinafter "Defendants") seek to dismiss Trafalgar's claim against them for fraudulently transferring Energy King's

---

[6] The fact that Mintz is not a party to the agreements does not mean that a claim for fraudulent inducement cannot be maintained against him. Output, Inc. v. Danka Business Systems, Inc., 991 So.2d 941, 944-45 (Fla.Dist.Ct.App. 2008).

10

assets to ARS with knowledge of Trafalgar's security interest.  Mintz and Hultman argue that they never possessed the assets and cannot be held liable as an aider and abettor, as such a claim does not exist under Florida law.  Freeman v. First Union Nat. Bank, 865 So.2d 1272, 1276 (Fla. 2004).  Trafalgar asserts that Mintz and Hultman directly participated in the transfer of tangible (non-cash) assets and acted not only in their capacity as officers of Energy King but "also for their personal benefit."  Compl. ¶ 10.

Trafalgar relies upon Willis v. Red Reef, Inc., 921 So.2d 681 (Fla.Dist.Ct.App. 2006) in which principals of a closely held corporation were found liable for fraudulent transfer of corporation's assets.  In Willis, the proceeds of the sale of corporate assets were sent directly to the personal accounts of the individuals.  Defendants argue in this case that there is no allegation of such diversion.  Mintz and Hultman further note that the Eleventh Circuit stated after Freeman that Florida law states that only debtors and transferees could be liable for fraudulent transfer.  Chepstow, Ltd. v. Hunt, 381 F.3d 1077, 1089, n.1 (11th Cir. 2004).

The Court concludes that because Trafalgar does allege in their complaint that Mintz and Hultman acted for their "personal benefit," the Court will not dismiss the fraudulent transfer claim at this motion to dismiss stage.  However, Trafalgar will have to prove that Mintz and Hultman not only may have signed the transfer agreement from Energy King to ARS, but had some personal possession of the proceeds of that sale, separate and apart from their acts as corporate officers of Energy King.

### E. Conspiracy

Trafalgar also asserts a claim for conspiracy against all Defendants for the "unlawful transfer of Energy King's HACS assets to ARS." Compl. ¶ 30. Defendants move to dismiss this claim under Florida law because corporate officers cannot be found to conspire with their own corporation. Garrido v. Burger King Corp., 558 So.2d 79, 81 (Fla.Dist.Ct.App. 1990). Trafalgar argues that two exceptions to the intracorporate conspiracy doctrine apply in this case. First, Trafalgar alleges that the officers had an independent personal stake in achieving the transfer of assets, and second, a third party, ARS, was involved. Trafalgar again refers to its allegation that Mintz and Hultman acted for their "personal benefit." Compl. ¶ 10.

In reply, Defendants assert that Trafalgar cannot maintain a conspiracy claim because it cannot maintain an actionable underlying claim for fraudulent transfer. In turn, Defendants argue that Trafalgar has failed to allege how Mintz and Hultman personally benefitted from the conspiracy. Defendants are correct that Trafalgar must allege an independent tort. Posner v. Essex Ins. Co. Ltd., 178 F.3d 1209, 1217 (11th Cir. 1999). As with the fraudulent transfer claim, Trafalgar must show that Mintz and Hultman had an independent personal stake in the transfer of the assets to ARS. At this motion to dismiss stage, the Court must give all reasonable inferences to Trafalgar's allegation of personal benefit. Therefore, the Court will deny the motion to dismiss the conspiracy claim.

### F. Trafalgar's Motion to Strike Jury Demand

In Case No. 09-Civ-60299, Trafalgar seeks to strike Energy King's demand for a

jury trial because the agreements between the parties specifically waive the right to a jury trial.  In response, Energy King notes that it only sought a jury trial on "issues so triable."  Energy King explains that if Trafalgar brings defenses or counterclaims outside the scope of the agreements, it is reserving its right to seek a jury trial on those claims.  As is apparent in the reply memorandum, the request to strike is premature until it is determined what claims are left to try.  Therefore, the Court will deny the motion to strike without prejudice, and defer ruling until the summary judgment stage of this litigation.

### G.  Energy King's Motion to Dismiss or Stay

Energy King argues that Trafalgar's action in Case No. 09-60320 should be dismissed or stayed because it should have been filed as a compulsory counterclaim to the earlier filed action.  The Court disagrees.  The first filed action is not necessarily the one to determine the course of the litigation.  The "first-filed" rule may be by-passed when the first action is for a declaratory judgment, and was  filed in anticipation of litigation.  Supreme International, Inc. v. Anheuser-Busch, Inc., 972 F.Supp. 604 (S.D.Fla. 1997).  In the present cases, Energy King filed its action after Trafalgar served it with a notice of default.  Although Energy King has a usury claim along with its declaratory judgment claim, the Court determines that Trafalgar was within its rights to separately file its action, which seeks payment of the amount due (along with its other claims).  Therefore, the Court will deny the motion to dismiss or stay.  While the actions will remain as separate cases, the actions will proceed along the same schedule.

13

## III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Trafalgar Defendants' Motion to Strike Jury Demand [DE 8 in Case No. 09-Civ-60299] is hereby **DENIED**, without prejudice;

2. The Trafalgar Defendants' Motion to Dismiss [DE 15 in Case No. 09-Civ-60299] is hereby **GRANTED in part and DENIED in part**;

3. The remedies sought in the Complaint in Case No. 09-Civ-60299 for attorneys' fees and punitive damages based upon the Loan Brokers Act are dismissed;

4. The Energy King Defendants and American Residential Services' Motion to Dismiss Counts I, III, and V [DE 14 in Case No. 09-Civ-60320] is hereby **DENIED;**

5. The Energy King Defendants and American Residential Services' Motion for Enlargement of Time to Respond as to Counts II and IV [DE 14 in Case No. 09-Civ-60320] is hereby **GRANTED**;

6. The Energy King Defendants' Motion to Dismiss or Stay [DE's 24/ 31 in Case No. 09-Civ-60320] is hereby **DENIED**;

7. The respective answers to each complaint shall be due by August 21, 2009.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 11th day of August, 2009.

JAMES I. COHN
United States District Judge

copies to:
counsel of record on CM/ECF